IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

FRANCES GIBSON AND GWEN NICHOLAS
AS WRONGFUL DEATH BENEFICIARIES                                                  PLAINTIFFS
OF CAMERON GIBSON AND FRANCES GIBSON,
INDIVIDUALLY

V.                                                                                     CAUSE NO. 4:09-CV-00182-CWR-LRA

INVACARE CORPORATION AND
JOHN DOE 1 THROUGH 10                                                             DEFENDANTS

### ORDER DENYING MOTIONS IN LIMINE

The above-styled cause is before the Court on three defense motions *in limine* regarding designated experts Dr. C . Kendall Clarke [Docket No. 53], Dr. C.T. Carley [Docket No. 55], and Dr. E. William Jones [Docket No. 57]. After reviewing the parties' briefs on the motions, the exhibits submitted alongside the filings, and authority governing the issues presented, the Court concludes that the motions must be denied.

This is a case regarding an Invacare Model 6252 hemi-walker. According to the plaintiffs, the hemi-walker failed under the weight of Cameron Gibson on January 21, 2008, causing him to fall. Seven days later, he died from injuries suffered in the fall. Ultimately, Cameron Gibson's wrongful death beneficiaries and his widow (hereinafter collectively "Gibson") brought suit under various theories of products liability. In support of those theories, Gibson designated [Docket No. 32] experts to offer testimony regarding the cause of the device's failure.

In its three motions *in limine*, Invacare attacks the qualifications of Dr. C. Kendall Clarke, Dr. C.T. Carley, and Dr. E. William Jones.

Dr. Clarke is a metallurgist with a bachelor's degree in metallurgical engineering, which he earned at the University of Alabama in 1968, and a master's degree in metallurgy and materials science, which he received from Lehigh University in 1970. He remained at Lehigh University to earn a doctorate degree in philosophy in metallurgy and materials science in 1973; while in the doctoral program, Dr. Clarke wrote his dissertation on fractography, which is the study of material fractures. *See* Clarke Resume [Docket No. 61-1].

Dr. Carley is a mechanical engineer whose experience spans more than a half-century. He graduated from Mississippi State University in 1955 with a bachelor's degree in mechanical engineering and earned a master's degree in the same field from the institution now known as Virginia Tech in 1961. In 1965, he graduated with a doctorate degree in mechanical engineering from North Carolina State University. Dr. Carley has worked with the Civil Engineer Corps of the United States Navy and has taught mechanical engineering at a number of educational institutions, including Mississippi State University, North Carolina State University, and two universities in Argentina. *See* Carley Resume [Docket No. 65-1].

Dr. Jones earned his bachelor's degree in agricultural engineering from Mississippi State University in 1958. He later received a master's degree in mechanical engineering from the University of Wisconsin in 1969 and a Ph.D. in the same field from Purdue University in 1974. Since 1975, he has worked as an instructor in Mississippi State University's Department of Mechanical Engineering, having enjoyed status as a professor since 1985. His extensive resume' lists no fewer than three projects conducted on behalf of the National Aeronautics and Space Administration. *See* Jones Resume [Docket No. 67-1].

Invacare offers no substantial argument against the expert qualifications of these men in

their respective fields. Instead, Invacare argues that none of these men has demonstrated a particular expertise with hemi-walker devices. *See* Defendant's Memorandum in Support of Clarke Motion *in Limine* [Docket No. 54] at 2; Defendant's Memo in Support of Carley Motion in Limine [Docket No. 56] at 2; Defendant's Memorandum in Support of Jones Motion *in Limine* [Docket No. 58] at 2.

Gibson responds by arguing that although the experts' opinions regard the Invacare hemi-walker, they do so only within the context of the fields of the doctors' respective areas of expertise. In Gibson's view, those bases of metallurgical and engineering knowledge entitle Dr. Clarke, for example, "to give an analysis on, among other things, why the aluminum tubing of the walker failed." Plaintiff's Memorandum in Support of their Response to Motion *in Limine* [Docket No. 62] at 2.

Efforts to admit expert testimony are governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The question at hand is not whether Dr. Clarke, Dr. Carley, and Dr. Jones are altogether unqualified to offer expert testimony but, rather, whether their respective expertises in the field of metallurgy and engineering entitle them to offer expert opinions on the cause of the hemi-walker's failure.

Invacare argues that the case at bar presents a situation similar to that confronting the

district court in *McSwain v. Sunrise Medical, Inc.*, 2010 WL 200004 (S.D. Miss. 2010) (Starrett, J.). In *McSwain*, the plaintiff sued the manufacturer and distributor of a wheelchair under products-liability theories and designated a mechanical engineer to offer expert testimony on the stability of the wheelchair, safety features that should have been included in the design, and the effectiveness of the instruction manual's warning. The defense conceded that the would-be expert "may have engineering experience" but "ha[d] no experience directly related to wheelchair design or function." *Id.* at *3.

Judge Starrett ruled that the witness' engineering background qualified him "to test the angle at which the wheelchair can be tipped back before tipping over, and to explain how different factors. . . affect[ ] the center of gravity, the stability of the chair, and the propensity to tip." *Id.* at *4. However, the district court took exception with the engineer's attempt, without root in any experience, to theorize that anti-tip tubes should have been a standard feature on the plaintiff's wheelchair and to represent, "without the benefit of any experience or education in wheelchair use or training, that the vast majority of wheelchair users cannot do a wheelie at will." *Id.* The court therefore forbade the witness to testify regarding the anti-tip tubes and the effectiveness of the manufacturer's warning. Judge Starrett specifically based his conclusion on the sound principle that an expert "cannot offer conclusions that have no logical connection to his expertise or to his methodology." *Id.* at *7.

But the circumstances in the case at bar are a far cry from those comprising *McSwain*, in which the would-be expert sought to testify on matters branching far from his core area of expertise. In this case, every matter about which Gibson's experts has offered an opinion fundamentally regards the strength of Gibson's hemi-walker – an issue with a clear "logical

4

connection" to each witness' expertise. When and if Dr. Clarke, Dr. Carley, or Dr. Jones attempts to offer testimony outside their areas of expertise at trial, then obviously defense counsel will be free to lodge a timely objection and to preclude introduction of such evidence. But to this point, none has done so.

Fifth Circuit precedent supports this conclusion. In *Young v. Illinois Central Gulf Railroad Company*, 618 F.2d 332 (5th Cir. 1980), the Court held that a civil engineer with more than 30 years of experience in "building and supervising the construction of highways" should have been permitted to testify regarding the dangerousness of a railroad crossing, but the opinion reflects no particular expertise with trains themselves. *See id.* at 338. Likewise, in *Eiland v. Westinghouse Electric Corporation*, 58 F.3d 176 (5th Cir. 1995), in which a plaintiff alleged that the defendant defectively designed a high-power circuit breaker that exploded, the Court found no error in the admission of an electrical engineer's expert testimony regarding the breaker's design, notwithstanding the lack of any suggestion that he had ever designed such a breaker. *See id.* at 180.

A review of a broader sample of precedent further bolsters Gibson's position. For example, in *Stilwell v. Smith & Newphew, Inc.*, 482 F.3d 1187 (9th Cir. 2007), the Ninth Circuit held that an expert metallurgist should have been permitted to testify regarding defects in reconstruction nails used to stabilize the plaintiff's broken legs, notwithstanding a lack of any direct experience with such devices. *Id.* at 1189, 1193. And in *S.G. Supply Company v. Greenwood International, Inc.*, 769 F. Supp. 1430 (N.D. Ill. 1991), where a metallurgical engineer was allowed to testify as to the results of his examination of a metal pipe, the district judge made a distinction helpful to the matter at hand: the engineer had hoped to opine that "the

weight of the water [in the pipe] . . . would be 70 [pounds per square inch] . . . ." *Id.* at 1435 n.7. The Court concluded that the expert "cannot . . . testify as to what the pressure was in the pipe, but he *can* testify as to whether the pipe would leak at that pressure" (emphasis included).

Similarly, in the case at bar, Rule 702 is not so broad as to permit Dr. Clarke, Dr. Carley, or Dr. Jones to offer any opinion remotely related to Gibson's hemi-walker. But neither is the Rule so narrow as to forbid evidence implicating the device simply because Gibson's experts have no specific expertise with such creations. Where there arise questions relevant to the hemi-walker that can be answered through their expertises in metallurgy and mechanical engineering, their opinions are appropriate.

Undoubtedly, "[t]he mere qualifying of a witness as an expert . . . does not necessarily render his every conclusion immune from challenge." *United States v. Ragano*, 476 F.2d 410, 416 (5th Cir. 1973). But Invacare views Rule 702's expertise requirement with a degree of specificity that would render expert testimony virtually inadmissible. Under Invacare's interpretation of Rule 702, Sir Isaac Newton should not have been permitted to offer his theory of gravity after watching an apple fall from a tree until he first demonstrated a special expertise in the field of horticulture, and Benjamin Franklin should have been precluded from discussing his experiments with electricity unless he supported his theories with a documented aptitude for championship-caliber kite flying.

Such criticism clearly would have missed the point; so too does Invacare's. Ultimately, this case presents the question of why a mechanical device failed. It cannot be seriously suggested that two mechanical engineers and a metallurgist with nearly 150 years of experience among them cannot "assist the trier of fact to understand the evidence or to determine a fact in

issue" in such a case. Fed. R. Evid. 702.

Invacare's second attack against the three experts – that they lacked bases for their opinions – is similarly unavailing.

Invacare contends that "Dr. Clarke is not aware of the type material normally used for walkers and hemi-walker" and that Dr. Clarke "thought a thicker tubing should be used[ ] but had no opinion regarding the type alloy that should be used." Def. Clarke Memo at 10.[1] Such evidence still would not entitle Invacare to strike Dr. Clarke's opinions, though. To be sure, an expert witness must base his opinion on "more than subjective belief or unsupported speculation." However, a review of Dr. Clarke's report and deposition testimony demonstrate that his conclusions rest on anything but. Rather, Dr. Clarke closely examined Gibson's failed hemi-walker and two otherwise identical Model 6252 hemi-walkers, and his report contains detailed findings.[2] Perhaps Invacare's arguments will sully Dr. Clarke's veracity with the jury at trial, but they are not enough to establish, for Rule 702 purposes, that his conclusions rest on mere speculation.

Likewise, Invacare argues that even if Dr. Carley is otherwise qualified to testify

---

[1] Moreover, according to Invacare, "Dr. Clarke did not consider how the extra weight from another alloy or thicker tubing might affect the utility of the hemi-walker to the user . . . ." Def. Memo at 11. This argument is misplaced. While Invacare is correct that Section 11-1-63(f)(ii) of the Mississippi Code requires a plaintiff alleging defective design to demonstrate that "there existed a feasible design alternative," that requirement is irrelevant to the issue of whether Dr. Clarke is qualified to offer expert testimony under Rule 702. The issue might be raised appropriately in a motion for summary judgment but not in a motion *in limine*.

[2] Indeed, the *McSwain* Court rejected the expert's testimony, in part, because there was "no documentation in his report about which wheelchair models were tested;" that his testing methods could not be reproduced and subjected to peer review, and that he did not even employ formal testing, relying instead on his personal experience. *McSwain*, 2010 WL 200004 at *6.

regarding the Model 6252 hemi-walker, "he has no basis for an opinion that it was foreseeable the hemi-walker could be used on one leg." Def. Carley Memo at 13. In Invacare's view, that opinion amounts to "nothing more than speculation and conjecture and must be stricken." Def. Carley Memo at 13.

However, Dr. Carley testified at his deposition that such a presumption would have been part of a design process comporting with standard engineering practices. Specifically, Dr. Carley said:

> When a designer – and this is in all design handbooks or design texts and manuals, you don't just design for a specific function. You have to look at all possible uses and misuses of a device, in order to ensure that your product is successful in the marketplace. For example, if you asked me to design that chair and you said, "Design it so if a person sits on it and distributes the weight evenly, on all four legs," I would say, "Well, what if somebody rocked back on two legs?" You would say, "Well, that's not to be expected." Well, people do that. I mean, you know, it's foreseeable that that sort of use will take place for a chair. And if the chair is not designed to handled that load and it collapses, then you've designed it poorly. So in this case, the walker if foreseeable, and I'm confident that it's foreseeable, that all four legs will not be loaded evenly all the time. If you go down steps, if you go across uneven payment, even if you go on a very flat surface – I mean, you've got an individual who has poor balance and he loses his equilibrium, he's going to load this thing with all his weight on one or two legs.

Plaintiff's Memo in Opposition to Carley Motion [Docket No. 66] at 16 (quoting Exhibit C [Docket No. 66-3] at 34-35).

Invacare's motion *in limine* to preclude introduction of Dr. Jones' testimony makes the same claim against his conclusion that leaning exclusively on one of the hemi-walker's four legs was a foreseeable use. Def. Jones Memo at 11-12. The argument is as unpersuasive regarding Dr. Jones' opinions as it is for those of Dr. Carley, and for precisely the same reason.

Undoubtedly, "[a]n expert's opinion must be preceded by facts in evidence and cannot be [based on] speculation or conjecture," *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th

Cir. 1990), and "a district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 367 (7th Cir. 1996)). But Dr. Carley and Dr. Jones have met that threshold; their opinions are based on what they view as a fundamental principle of mechanical engineering. If Invacare can attack either expert's credibility sufficiently to undermine his conclusion in the minds of the jurors, then obviously it is free to do so.[3] But Gibson has demonstrated that each expert is qualified at least to offer the opinion.

Therefore, Invacare's motions *in limine* regarding Dr. C . Kendall Clarke [Docket No. 53], Dr. C.T. Carley [Docket No. 55], and Dr. E. William Jones [Docket No. 57] are each denied.

SO ORDERED this Seventh day of June 2011.

        /s/ *Carlton W. Reeves*
        Hon. Carlton W. Reeves
        United States District Court Judge

---

[3] Our adversarial system expects "vigorous cross-examination, presentation of contrary evidence." *McSwain*, *supra*, at *2 (citations omitted). Those weapons coupled with "careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. To the extent that Invacare believes these experts' testimony to be specious, it should rely on these rudimentary tools and allow the jury to determine an appropriate weight to assign the evidence.